STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

Joseph D. BEHNKE, Defendant-Appellant.

Supreme Court

*No. 88–2228–CR. Argued April 25, 1990.—Decided June 25, 1990.*

(Also reported in 456 N.W.2d 610.)

For the plaintiff-respondent-petitioner the cause was argued by *Maureen McGlynn*, assistant attorney general, with whom on the briefs was *Donald J. Hanaway*, attorney general.

For the defendant-appellant there was a brief filed by *Mark G. Sukowaty*, Madison and oral argument by *Mark G. Sukowaty*.

SHIRLEY S. ABRAHAMSON, J. This is a review of an unpublished decision of the court of appeals, filed September 13, 1989, reversing the conviction of Joseph D. Behnke entered by the Circuit Court of Manitowoc County, Allan Deehr, Circuit Judge. The court of appeals reversed the conviction and remanded the cause for a new trial. We affirm the decision of the court of appeals.

We hold that the absence of defense counsel at the return of the jury verdict, without the defendant's knowing, voluntary, and unequivocal waiver of the right to counsel, coupled with the failure to poll the jury, without the defendant's knowing, voluntary, and unequivocal waiver of the right to poll, is grounds for automatic reversal.

## I.

The facts of this case are undisputed. In a one-day trial on April 13, 1988, the defendant was convicted of a single count of bail jumping contrary to sec. 946.49(1)(b), Stats. 1988–89. The jury retired to deliberate at approximately 3:30 P.M. and returned to the courtroom at approximately 7:35 P.M. On the jury's return and prior to the announcement of the verdict, the circuit court announced that defense counsel, who had left the courtroom for another appointment, had been excused and that the jurors should not view defense counsel's absence as a slight of their time or effort. The circuit court explained defense counsel's absence as follows:

> The jury should be informed that I previously excused the appearance of [defense counsel]. He had another commitment this evening, and it's within the Court's discretion to excuse such an appearance. I thought it was a good excuse and so I did. It's not that he is not interested or that he isn't appreciative of the time and effort you have put in this.

The jury returned a guilty verdict.

In response to the circuit court's inquiry, the prosecution waived polling of the jury. The circuit court then informed the defendant of his right to poll the jury and asked whether the defendant wanted to waive his right. The following colloquy took place:

> COURT: Mr. Behnke, a defendant or any party has the right to have the jurors individually questioned as to whether the verdict that has been read by the Court is the verdict of that particular juror. Sometimes that is done, other times the party just as the State did waives such polling. Did your attorney discuss that with you?

MR. BEHNKE: No.

COURT: Do you want the jury polled?

MR. BEHNKE: No, just, you know, God forgive them. They don't know what they have done.

COURT: The Court then receives the verdict as returned by the jury. Ladies and Gentlemen, thank you very much for your assistance in this case.

After this colloquy the circuit court dismissed the jury without polling the jury.

At the postconviction motion hearing, both defense counsel and the defendant testified that they had not discussed polling the jury prior to counsel's departure. Defense counsel testified that he remained with the defendant during jury deliberations until approximately 5–5:30 P.M. At that time, he obtained the circuit court's permission to leave the courthouse to pick up his children from a child-care facility nearly thirty miles from the courtroom. After he informed the defendant of his imminent departure, defense counsel wished the defendant luck and left. The defendant had, according to defense counsel's testimony, counsel's home and office telephone numbers. Defense counsel acknowledged that he failed to leave any instructions concerning the return of a jury verdict or polling the jury.

The defendant testified that counsel did not explain the return of the jury's verdict or the defendant's right to poll the jury prior to his departure. According to the defendant, he did not understand his rights when the circuit court informed him that he could poll the jury after the verdict was announced. The defendant further testified that at the return of the verdict two jurors reacted visibly when he made his statement declining polling of the jury. According to the defendant, one of the male jurors was red in the face "like he was mad

about something or something was bothering him" and one of the female jurors "was giving me a dead stare."

In a memorandum decision and order dated November 15, 1988, the circuit court denied the defendant's postconviction motions. The circuit court found that the defendant did not waive his right to have counsel present at the return of the verdict: "No waiver . . . appears on the record. Waiver cannot be presumed from a silent record."

The circuit court expressly found that the jurors' actions or reactions at the return of the verdict were not irregular, stating:

> The Defendant's recollection that two jurors exhibited signs of anxiety over their decision is at best sworn balderdash . . . .. All actions and responses of the jury were normal and consistent with its sworn responsibility. The record provides no basis for any inferences to the contrary.

The circuit court concluded that defense counsel's absence on the return of the verdict constituted either ineffective assistance of counsel or denial of counsel, but that any error caused by the absence of counsel was harmless error beyond a reasonable doubt.

Had counsel been present, counsel could have waived the right to poll. The circuit court made no finding regarding whether the defendant validly waived his right to poll the jury. No knowing, voluntary, or unequivocal waiver appears of record. The circuit court's comment on the defendant's response to the question of waiving polling was that although the defendant had an opportunity to poll the jury, he "was more intent on commenting about the jury verdict than exercising any right to poll the jury."

## II.

On review in this court, both the defendant and the state agree that the defendant's right to counsel at the return of a verdict is guaranteed by the state and federal constitutions. Amend. VI, U.S. Const.; Art. I, sec. 7, Wis. Const. The return of the verdict is a critical stage of the proceeding. *Smith v. State,* 51 Wis. 615, 620–21, 8 N.W. 410 (1881); *Spencer v. State,* 85 Wis. 2d 565, 571, 271 N.W.2d 25 (1978); *Siverson v. O'Leary,* 764 F.2d 1208, 1214 (7th Cir. 1985).

Both the state and the defendant also agree that polling the jury is a significant right. The right to poll the jury at the return of the verdict is a corollary to the defendant's right to a unanimous verdict. Polling is a means by which the uncoerced unanimity of the verdict can be tested. Each juror must take individual responsibility and state publicly that he or she agrees with the announced verdict. *State v. Cartegena,* 140 Wis. 2d 59, 61–62, 409 N.W.2d 386 (Ct. App. 1987).

Both parties acknowledge that the circuit court may excuse counsel only with the knowing and voluntary waiver unequivocally expressed by the defendant on the record. *Spencer, supra,* 85 Wis. 2d at 572, 574. In this case, the circuit court properly concluded that no such waiver of counsel was made. The state does not dispute this finding.

The state asserts, however, that the defendant validly waived his right to poll the jury. We do not agree with the state. The defendant had not waived his right to counsel and did not make a knowing, voluntary, and unequivocal waiver of his right to poll on the trial record. At the postconviction motions hearing, the defendant, a

30-year-old individual with a tenth grade education, testified that he did not understand the significance of polling the jury at the return of the jury verdict of his trial. He further testified that he never discussed his right to poll the jury with defense counsel prior to the unwaived absence of counsel at the return of the jury verdict. We conclude that the state's contention that the defendant validly waived his right to poll the jury must fall. The circuit court did not find, nor does the record show, that the defendant made a knowing, voluntary, and unequivocal waiver of the right to poll the jury. See *Smith, supra,* 51 Wis. at 620.

## III.

The right to poll the jury is intertwined with the defendant's constitutional right to counsel at the return of the jury verdict. In *Smith v. State,* 51 Wis. 615, 8 N.W. 410 (1881), this court recognized that the absence of counsel at the time the jury returns its verdict may result in the forfeiture of rights by the defendant, one of which is the "very important right" to poll the jury. The *Smith* court said that when defense counsel's absence causes the defendant to lose his right to poll the jury, the judgment of conviction must be reversed. The *Smith* court stated:

> If, by the absence of the defendant's counsel at the time of receiving the verdict, the defendant lost any right which might have been beneficial to him, then we think it was error not to grant a new trial for that reason. It is insisted that he lost the right to poll the jury. If he did, then he lost a right which was very important to him. That a defendant, in either a civil or criminal action, has the right to poll the jury, is well settled; and a refusal to permit him to do so is

error, for which the verdict will be set aside. 51 Wis. at 620.

*Smith* remains good law today.[1]

The state submits that reversal depends on the characterization of the violation of the defendant's constitutional right to counsel and the existence of either (1) harmless error, if the error is characterized as denial of counsel, or (2) prejudice, if the error is characterized as ineffective assistance of counsel. The state argues that regardless of how the court chooses to characterize the denial of the constitutional right to representation in this case, reversal is not appropriate.

The state first reasons that the constitutional violation may be viewed as the circuit court's actual or constructive denial of the defendant's right to counsel at a critical stage of the proceedings. *Perry v. Leeke*, 109 S. Ct. 594, 599–600 (1989). The circuit court improperly, *i.e.*, without the consent of the defendant, permitted defense counsel to absent himself when the jury returned. The state asserts that the harmless error test set forth in *Chapman v. California*, 386 U.S. 18, *reh'g denied*, 386 U.S. 987 (1967), is ordinarily applicable in denial of counsel cases, and the state bears the burden of showing that the denial of counsel was harmless beyond a reasonable doubt.[2]

---

[1] In *State v. Wojtalewicz*, 127 Wis. 2d 345, 347–48, 379 N.W.2d 338 (Ct. App. 1985), the court of appeals commented that "[d]espite its age, *Smith* remains the law today, and it is in line with the rule adopted in the great majority of jurisdictions to the effect that a defendant's right to poll the jury, if not waived, is absolute and its denial requires reversal even though the remainder of the trial is error free." (Citations and notes omitted.)

[2] The state cites cases in which the United States Supreme Court applied the harmless error test to actual or constructive

The state asserts that reversal is automatic only when counsel's absence threatens the fundamental fairness of a particular trial, when counsel's absence undermines our confidence in the outcome of the proceeding, or when an intelligent assessment of the scope of the prejudice resulting from counsel's absence is impossible to make or is completely speculative. See *Young v. United States ex rel. Vuitton et Fils S.A.,* 481 U.S. 787, 809–814 (1987); *Holloway v. Arkansas,* 435 U.S. 475, 490–91 (1988); *United States v. Satterwaite,* 486 U.S. 249, 256–58 (1988). According to the state, the court must look at the role counsel can play at the particular stage in assuring a fundamentally fair trial to determine whether reversal is automatic. The state urges that this case does not fall within the range of cases in which reversal is automatic and argues that the absence of counsel and the failure to poll the jury in this case are harmless errors. See, *e.g., Siverson v. O'Leary, supra* 764 F.2d at 1217.

Alternatively the state suggests that this court adopt a second possible characterization of the constitutional violation in this case, namely, that defense counsel's absence constitutes ineffective assistance of coun-

---

denial of the right to counsel. See, *e.g., Coleman v. Alabama,* 399 U.S. 1 (1970); *Satterwhite v. Texas,* 486 U.S. 249 (1988).

This approach appears inconsistent with other statements of the United States Supreme Court. In *Perry v. Leeke, supra,* 109 S. Ct. at 600, the Supreme Court stated that "actual or constructive denial of assistance of counsel altogether is not subject to the kind of prejudice analysis that is appropriate in determining whether the quality of a lawyer's performance itself has been constitutionally ineffective . . .." See also *Strickland, supra,* 466 U.S. at 692; *United States v. Cronic,* 466 U.S. 648, 659, n.25 (1986); *Delaware v. Van Arsdall,* 475 U.S. 673, 681 (1986); *Penson v. Ohio,* 109 S. Ct. 346, 354 (1988).

sel. By voluntarily leaving the defendant without counsel at the return of the verdict, defense counsel, argues the state, rendered ineffective assistance of counsel. According to the state, the defendant bears the burden of demonstrating that he or she received representation that fell below community standards and that he or she suffered prejudice. *Strickland v. Washington,* 466 U.S. 668 (1984); *State v. Pitch,* 124 Wis. 2d 628, 369 N.W.2d 711 (1985). The test for actual prejudice is whether counsel's errors were serious enough to deprive the defendant of a fair trial, to undermine confidence in the outcome. The state argues that the ineffective assistance of counsel in this case did not result in prejudice in this case.[3]

[3]The state bolsters its argument that the reversal is not automatic by directing our attention to *Spencer, supra* is misplaced. In *Spencer,* as in this case, the defendant did not knowingly, voluntarily, and unequivocally waive counsel. In *Spencer,* the court addressed the issue of whether the circuit court's intervention and polling of the jury were sufficient to protect the defendant's rights to counsel and to poll the jury. Because the circuit court in *Spencer* polled the jury, we concluded that the defendant's rights were not irreparably lost. The error, the failure to have counsel present when the circuit court polled the jury, was of limited impact because the defendant does not have the right to cross-examine jurors after they have been polled by the court. *State v. Ritchie,* 46 Wis. 47, 56, 174 N.W.2d 504 (1970). The *Spencer* court concluded the constitutional infirmity was limited in scope and applied the *Chapman* harmless error test. *Spencer, supra* 85 Wis. 2d at 573.

The error in the case at bar is of different constitutional dimensions. In contrast to *Spencer,* in this case the circuit court failed to poll the jury after return of the verdict.

The state would have us modify *Spencer* to substitute the *Strickland* test for the *Chapman* test. We need not address this issue in this case.

Applying both the harmless error and prejudice tests, the state contends that the conviction must stand. The state asserts that the basic purpose of polling—the unanimity of the verdict—was assured in this case through other means such as instructing the jury that the verdict had to be unanimous. The state further argues that nothing in the record suggests that the trial was unfair, that the verdict was unreliable or that the result would have been different had defense counsel been present and polled the jury. The circuit court expressly found that the actions of the jury were "normal and consistent with its sworn responsibility." The state therefore concludes that the absence of counsel and the failure to poll the jury in this case are not grounds for automatic reversal and that any error was harmless and not prejudicial.

We remain unconvinced by the state's arguments that prejudice or harmless error must be shown for reversal in this case. We conclude that the absence of defense counsel at the return of the jury verdict, without the defendant's knowing, voluntary, and unequivocal waiver of the right to counsel, coupled with the failure to poll the jury, without the defendant's knowing, voluntary, and unequivocal waiver of the right to poll, is grounds for automatic reversal. Prejudice is presumed.

We view the constitutional violation created by the absence of counsel, coupled with the failure to poll the jury in this case, as causing irreparable harm to the defendant. The jury was never polled, and we do not know what would have happened had it been polled. There is no way of now polling the jury. *Smith, supra* 51 Wis. at 623. Although the circuit court ruled that the jury did not behave in any manner to suggest that polling would have produced a juror who did not support

the verdict and thus changed the outcome of the trial, the fact remains that we cannot know the results of polling the jury.

Any assessment we could make in this case regarding the harm or prejudice to the defendant resulting from the violation of the defendant's constitutional right to counsel is purely speculative. *Smith, supra* 51 Wis. at 622–23. Because we cannot indulge in calculation of or speculation about the prejudice arising from the absence of counsel and the failure to poll the jury in this case, the constitutional violation mandates automatic reversal.

For the reasons set forth we affirm the decision of the court of appeals reversing the judgment of conviction and remanding this case to the circuit court for a new trial.

*By the Court.*—The decision of the court of appeals is affirmed.