STATE of Wisconsin,
Plaintiff-Respondent,

v.

Eric W. RAYE,
Defendant-Appellant-Petitioner.

Supreme Court

*No. 2004AP770–CR. Oral argument April 27, 2005.
—Decided June 7, 2005.*

2005 WI 68

(Also reported in 697 N.W.2d 407.)

For the defendant-appellant-petitioner there were briefs by *Brian C. Hough* and *Robinson Law Firm,* Appleton, and oral argument by *Brian C. Hough.*

For the plaintiff-respondent the cause was argued by *Sarah K. Larson,* assistant attorney general, with whom on the brief was *Peggy A. Lautenschlager,* attorney general.

¶ 1. ANN WALSH BRADLEY, J. The petitioner, Eric Raye, seeks review of an unpublished decision of

the court of appeals affirming a circuit court judgment of conviction and order denying postconviction relief.[1] Raye was convicted of operating a motor vehicle with a prohibited blood-alcohol concentration, contrary to Wis. Stat. § 346.63(1)(b) (2001–02).[2]

¶ 2. In his quest for a new trial, Raye advances two primary arguments. First, he contends that the circuit court erroneously exercised its discretion when polling of the jury revealed that the verdict was not unanimous and the court did not grant a mistrial or direct the jury to deliberate further. Second, he asserts that the court of appeals erroneously concluded that he had waived the issue.

¶ 3. We agree with Raye that he did not waive the issue presented. Furthermore, we determine that a new trial is warranted under the facts of the case. Here, the circuit court erroneously exercised its discretion by not granting a mistrial or directing the jury to deliberate further upon learning of a juror's dissent. The court's continuation of the jury poll and individual questioning of the dissenting juror, although well meaning, went too far, thereby tainting the deliberation process. Accordingly, we reverse the decision of the court of appeals and remand for a new trial.

I

¶ 4. Raye was charged with operating a motor vehicle while intoxicated (OWI) and operating with a

---

[1] *State v. Raye,* No. 2004AP770–CR, unpublished slip. op. (Wis. Ct. App. August 10, 2004) (affirming a judgment and an order of the circuit court for Outagamie County, Dennis C. Luebke, Judge).

[2] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

prohibited blood-alcohol concentration (PAC), both as third offenses. Following a two-day trial, the jury returned a verdict acquitting him of the OWI charge but convicting him of the PAC charge.

¶ 5. After the verdict was read, Raye requested that the members of the jury be polled individually. The court polled six jurors before reaching Brian Clark, the jury foreman. When asked by the circuit court, "Is this your verdict?" Clark replied, "Can I ask a question?" The court directed Clark to first answer the poll question. Clark then responded "No." After the "no" response, the court continued polling the five remaining jurors. With the exception of Clark, every juror assented to the verdict.

¶ 6. Recognizing that the verdict was not unanimous, and not knowing the content of Clark's question, the circuit court excused the 11 jurors from the courtroom with the following statement:

> Okay. The verdict is not unanimous from the response, at least, initially received; therefore, I can't accept it.
>
> Mr. Clark has a question that he wants to make an inquiry that he wants to make of the Court. I don't know what the nature of that is; therefore, I don't know whether it is appropriate that the question be asked in the presence of all the remaining jurors given what stumbling block we have.
>
> What I'm going to do, I'm going to ask that the other 11 of you, if you would follow the bailiff, please, and we'll allow Mr. Clark to ask his question.

¶ 7. After sending the 11 other jurors back to the jury room, the circuit court thanked Clark for his "forthrightness" in answering the question. It explained that neither its questions nor any questions counsel

might ask should be considered as pressure to change his verdict. The court repeated this information twice and assured Clark that he was free to vote his conscience. With this caveat, the court commenced questioning.

¶ 8. The circuit court asked Clark what his question was, and Clark replied that he had concerns about the evidence. Listening to Clark, the court attempted to understand his position. It stated:

> You know, if you are just giving an explanation that would suggest that you were ultimately convinced to vote this way by the facts and the argument of other jurors, then that's acceptable and we would accept this as your verdict, maybe as a result of compromise or some other considerations, but if you are saying that it really is not your verdict, I need to know that.

¶ 9. Clark acknowledged that his verdict was "on a compromise." The circuit court then asked, "You ultimately listened to the other jurors, were convinced and persuaded by their argument and changed your vote based upon that collective analysis of the evidence, is that what you are telling us?" Clark replied, "Not really."

¶ 10. The circuit court subsequently asked whether either the district attorney or Raye's defense counsel wanted to make any inquiry. The following exchange then occurred:

> [DISTRICT ATTORNEY]: I guess all we really want to know for sure is, when the Judge asks, is this the jury's verdict and you answered yes, and that's what is agreed on, the Judge wants to know is, do you – in your analysis of what happened here today, along with what you heard the other jurors say, and what you heard them argue in the jury room, do you agree with their verdict as being your own?

346

JUROR CLARK: Not 100 percent, no.

[RAYE'S COUNSEL]: I think that's enough.

THE COURT: Is there anything that – I'm going to –

[DISTRICT ATTORNEY]: Okay.

[THE COURT[3]]: I would rather error in allowing Mr. Clark to resolve his concerns and questions than simply to compel him to accept a verdict that he questions.

Is there something that the Court can do to assist you? Is the transcript an important issue?

¶ 11. When asked by the circuit court whether there was something it could do to assist him, and whether the transcript was an important issue, Clark answered "Yes." The court then inquired, "Is there an aspect of that testimony that is more important than another?" Again, Clark responded in the affirmative, explaining that he knew which part of the transcript it was and that the other jurors agreed. The court instructed Clark to return to the jury room to draft a written request for the transcript. In all, the circuit court's comments and questions to Clark lasted approximately five minutes.

¶ 12. The circuit court declared a recess and handled a proceeding in a different case. During the recess the jury requested a portion of the transcript, and it was prepared. Ultimately, the jury asked for the testimony of one of the State's expert witnesses, a chemist. After approximately 30 minutes, the court reconvened so that the State and Raye could verify that

---

[3] The original transcript attributes this statement to Raye's counsel; however, the court reporter's errata sheet makes clear that this statement actually came from the circuit court.

the transcript was acceptable. At that point, Raye moved for a mistrial on the ground that the verdict was not unanimous. The circuit court denied the motion, indicating that it had not actually accepted the original verdict and would provide the transcript to the jurors.

¶ 13. After further deliberations, the jury returned the same verdict, this time without dissent. Raye was found guilty and sentenced on the PAC charge but acquitted on the OWI charge. He filed a postconviction motion to vacate the conviction or, alternatively, for a new trial. The court denied the motion. Raye appealed, asserting that the circuit court had erred by individually questioning Clark and then sending the jury back to deliberate further after polling revealed that Clark had dissented from the verdict.

¶ 14. The court of appeals affirmed the judgment and order of the circuit court. In doing so, it noted that the propriety of the interrogation of Clark following polling was waived because Raye had failed to make a contemporaneous objection. *State v. Raye*, No. 2004AP770–CR, unpublished slip. op. at ¶ 7 (Wis. Ct. App. August 10, 2004). Even on the merits, however, the court of appeals concluded that Raye's arguments failed. *Id.*, ¶ 9. Raye petitioned this court for review.

## II

¶ 15. In this case we are asked to examine the actions of the circuit court in the context of jury polling. Jury polling is a common law procedure whereby "after verdict each juror is separately asked whether he or she concurs" in the verdict. *State v. Coulthard*, 171 Wis. 2d 573, 580, 492 N.W.2d 329 (Ct. App. 1992) (quoting

348

American Bar Association, *Standards For Criminal Justice,* sec. 15–4.5 commentary at 15–146 (2d ed. 1980), quoting in turn *Commonwealth v. Martin,* 109 A.2d 325, 328 (Pa. 1954)).

¶ 16. When we review the actions of the circuit court here, we must determine whether the court erroneously exercised its discretion. *See State v. Cartagena,* 140 Wis. 2d 59, 62–63, 409 N.W.2d 386 (Ct. App. 1987). An erroneous exercise of discretion may arise from an error in law or from the failure of the circuit court to base its decisions on the facts in the record. *Meyer v. Meyer,* 2000 WI 132, ¶ 15, 239 Wis. 2d 731, 620 N.W.2d 382 (citing *King v. King,* 224 Wis. 2d 235, 248, 590 N.W.2d 480 (1999)).

### III

¶ 17. The right to trial by jury protected by the state constitution includes the right to a unanimous verdict in criminal trials.[4] *Cartagena,* 140 Wis. 2d at 61 (citing *Holland v. State,* 91 Wis. 2d 134, 138, 280 N.W.2d 288 (1979)). The jury must arrive at the unanimous verdict freely and fairly. *Jones v. United States,* 273 A.2d 842, 844 (D.C. 1971) (citations omitted). As a corollary to the unanimous verdict, a defendant has the right to poll jurors individually. *Cartagena,* 140 Wis. 2d at 61–62 (citing *State v. Wojtalewicz,* 127 Wis. 2d 344, 350, 379 N.W.2d 338 (Ct. App. 1985)).

¶ 18. The purpose of jury polling is to test the uncoerced unanimity of the verdict by requiring jurors

---

[4] A third offense OWI or PAC is a criminal offense. See Wis. Stat. §§ 346.65(2)(c) and 939.12.

to take individual responsibility and state publicly that they agree with the announced result. *State v. Wiese,* 162 Wis. 2d 507, 517, 469 N.W.2d 908 (Ct. App. 1991) (citing *State v. Behnke,* 155 Wis. 2d 796, 801, 456 N.W.2d 610 (1990)). An ancillary purpose is to allow jurors to dissent although previously agreeing to the verdict. *Id.* at 518.

¶ 19. Accordingly, it has been recognized that, "the verdict of a jury must be arrived at freely and fairly and that the validity of a unanimous verdict is not dependent on what the jurors agree to in the jury room, but rather upon what is unanimously reported in open court." *Jones,* 273 A.2d at 844 (citations omitted).

▮▮▮▮

¶ 20. The right to poll the jury is an absolute right, if not waived, and its denial requires reversal. *Wojtalewicz,* 127 Wis. 2d at 346. Nevertheless, defendants may waive their right by failing to ask for it in the first instance, or by failing to ask for additional polling when given the opportunity to request it. *State v. Cydzik,* 60 Wis. 2d 683, 695–96, 211 N.W.2d 421 (1973).

¶ 21. As noted above, Raye makes two primary arguments related to the jury polling that took place in this case. First, he contends that the circuit court erroneously exercised its discretion when polling revealed that the verdict was not unanimous and the court did not grant a mistrial or direct the jury to deliberate further. Second, he asserts that the court of appeals erroneously concluded that he had waived the issue. We examine each argument in turn, beginning with the issue of waiver.

A.

¶ 22. Raye contends that the court of appeals erroneously concluded that he waived any claims of

350

error related to the circuit court's polling procedures. Specifically, he submits that there was no opportunity for a contemporaneous objection at the circuit court, and even if there was, no corrective measures could have taken the place of a mistrial.

¶ 23. The State, meanwhile, responds that Raye had several opportunities to make contemporaneous objections to the circuit court's polling procedures, and Raye's motion for mistrial after the continuation of the poll had already ended and after the circuit court had concluded its questioning of Clark did not adequately preserve Raye's claim for appeal. The State therefore maintains that Raye waived any claims of error related to the circuit court's allegedly erroneous jury polling procedure.

¶ 24. It is an essential principle of appellate review that issues must be preserved at the circuit court. *State v. Huebner*, 2000 WI 59, ¶ 10, 235 Wis. 2d 486, 611 N.W.2d 727. Issues that are not preserved at the circuit court, including alleged constitutional errors, generally will not be considered on appeal. *Id.*, (citing *State v. Caban*, 210 Wis. 2d 597, 604, 563 N.W.2d 501 (1997)). We have described this rule as the "waiver rule" in the sense that issues not preserved are deemed waived. *Id.*, ¶ 11.

¶ 25. As a rule of judicial administration, the waiver rule serves important purposes. Raising issues at the circuit court allows the court to correct or avoid the alleged error in the first place, eliminating the need for appeal. *Id.*, ¶ 12 (citing *State v. Erickson*, 227 Wis. 2d 758, 766, 596 N.W.2d 749 (1999)). It also gives both parties and the circuit court notice of the issue and a fair opportunity to address the objection. *Id.*

¶ 26. Appellate courts, however, have authority to ignore the waiver rule and have done so in analogous cases involving a circuit court's interference with a jury. For example, in *Brasfield v. United States*, 272 U.S. 448, 449 (1926), the United States Supreme Court considered the propriety of a district court's inquiry into the numerical division of a stalled jury. There, after some hours of deliberation, the district court asked the jury how it was split, and was informed by the foreman that it stood nine to three, without indicating which number favored a conviction. *Id.* Despite the defendant's failure to preserve the issue, the Supreme Court reached the merits and adopted a per se rule prohibiting such practice. *Id.* at 450. In a tersely worded opinion, the Court wrote:

> We deem it essential to the fair and impartial conduct of the trial, that the inquiry itself should be regarded as ground for reversal. Such procedure serves no useful purpose that cannot be attained by questions not requiring the jury to reveal the nature or extent of its division. Its effect upon a divided jury will often depend upon circumstances which cannot properly be known to the trial judge or to the appellate courts and may vary widely in different situations, but in general its tendency is coercive. . . .
>
> The failure of petitioners' counsel to particularize an exception to the court's inquiry does not preclude this court from correcting the error. This is especially the case where the error, as here, affects the proper relations of the court to the jury, cannot be effectively remedied by modification of the judge's charge after the harm has been done.

*Id.* (citations omitted).

¶ 27. Likewise, in *State v. McMahon,* 186 Wis. 2d 68, 89, 519 N.W.2d 621 (Ct. App. 1994), the court of appeals addressed the same issue of whether the circuit court erred by inquiring into the numerical division of the jury during its deliberations. In its decision, the court of appeals acknowledged that there was no objection by the defendant at the circuit court. *Id.* at 93. Nevertheless, it rejected the State's argument for waiver and concluded that the circuit court had erred in asking the question. *Id.* Following the Supreme Court's reasoning in *Brasfield,* the court explained why the failure to object was not an important or useful prerequisite:

> We [reach the issue] in this case for the same reason expounded by the United States Supreme Court in *Brasfield* . . . . The question before us affects the proper relations of the jury and could not have been effectively remedied by modification of the judge's question after it was asked.

*Id.*

¶ 28. The courts in *Brasfield* and *McMahon* declined to apply the waiver rule. We find their rationale persuasive. The question here, like the question before the courts in those cases, affects the proper relations between the circuit court and the jury and may not have been "effectively remedied by modification" after the error was committed.

¶ 29. Ultimately, however, we need not determine whether to apply the waiver rule because we view the motion as timely made. Admittedly, Raye's counsel did not make a formal objection during the approximately five-minute period when Clark was alone with the court and counsel. However, after the third time that Clark

disavowed the verdict, Raye's counsel stated, "I think that's enough." Shortly thereafter a recess was taken. Upon going back on the record after recess, Raye's counsel made a motion for a mistrial on the ground that the verdict was not unanimous. Given the circumstances, we conclude that the motion was timely and that it was not waived. Accordingly, we will reach the merits of Raye's claim.

## B.

¶ 30. The second question we address is whether the circuit court erroneously exercised its discretion when polling revealed that the verdict was not unanimous and the court did not grant a mistrial or direct the jury to deliberate further. Raye asserts that the circuit court had only two options upon Clark's dissent: declare a mistrial or return the jury back for further deliberation.

¶ 31. The State, on the other hand, contends that the circuit court properly exercised its discretion by continuing the jury poll and interrogating Clark after his question. It argues that Clark's inquiry of "Can I ask a question?" created ambiguity in his answer to the jury poll and was therefore not a clear dissent to the verdict.

¶ 32. Under Wisconsin law, a circuit court has two options if a juror dissents during jury polling or indicates that the assent is merely an accommodation and against the juror's conscience. First, the court can send the jury back for continued deliberations. *Wiese,* 162 Wis. 2d at 518 n. 2 (citation omitted). Second, the court may determine that further deliberations would be fruitless and grant a mistrial. *Id.*

354

¶ 33. Wisconsin's approach is consistent with the American Bar Association Standards, which provide:

Standard 15–4.5. Polling the jury

When a verdict has been returned and before the jury has dispersed, the jury shall be polled at the request of any party or upon the court's own motion. The poll shall be conducted by the court or clerk of court asking each juror individually whether the verdict announced is his or her verdict. *If upon the poll there is not unanimous concurrence, the jury may be directed to retire for further deliberations or may be discharged.*

*See* III American Bar Association, *Standards for Criminal Justice,* sec. 15–4.5 at 15.145–46 (2d ed. 1980) (emphasis added).

¶ 34. Furthermore, it is embraced by commentators as representing the "better view" of polling practices. *See* 5 Wayne R. LaFave, Jerold H. Israel, and Nancy J. King, *Criminal Procedure* § 24.9(e) (2d ed. 1999) ("If the poll reveals that there are not a sufficient number of votes for a valid verdict, then under the better view the court has the discretion either to direct the jury to retire for further deliberations or to discharge the jury.") (citations omitted).

¶ 35. Wisconsin does recognize a third option, however, for situations where a juror gives an ambiguous or ambivalent assent: question the juror. In *Cartagena,* 140 Wis. 2d at 62, the court of appeals held that circuit courts should interrogate jurors who, during the poll, create some doubt as to their vote. Doubt may result from the juror's demeanor, tone of voice, or language used. *Id.* However, the circuit court should

355

first make a determination that the answer was ambiguous or ambivalent before it questions the juror further. *Id.*

¶ 36. As noted above, when initially asked by the circuit court, "Is this your verdict?" Clark replied, "Can I ask a question?" This response was clearly ambiguous. However, when pressed by the circuit court to first answer the poll, Clark replied with an unambiguous "No." The record does not reflect any equivocation in this answer. There was no caveat, and there was no indication that Clark did not understand the question.[5]

¶ 37. With Clark's unambiguous "No," the circuit court had two options from which to proceed: grant a mistrial or return the jury back for further deliberations. Ultimately, it chose neither. Instead, it continued polling the jury and interrogated Clark individually. Because these actions were not available options upon a juror's dissent, the circuit court's decision to pursue them constituted an erroneous exercise of discretion.

¶ 38. In its defense, the State maintains that the circuit court's actions were designed to respond to Clark's hesitancy or to clarify what his questions were about the evidence. Accordingly, it asks that we defer to the circuit court's *implicit* finding that the phrase, "Can I ask a question?" coupled with Foreman Clark's demeanor and tone of voice, was an ambiguous or ambivalent answer to the question: "Is this your verdict?"

¶ 39. The problem with the State's argument, of course, is the circuit court's *explicit* acknowledgement that it did not have a unanimous jury. At the conclusion

---

[5] When faced with this situation, the circuit court should consider conferring first with counsel in a sidebar before proceeding. Although it is not the only way of handling the matter, we believe that the court may benefit from such input.

of the polling, the circuit court stated, "Okay. The verdict is not unanimous from the response, at least, initially received; therefore, I can't accept it." The court then removed the other 11 jurors and thanked Clark for his "forthrightness" in answering the question. With these words, the court did not express any doubt as to whether Clark dissented.

¶ 40. If there were any lingering questions about the nature of Clark's response, they were resolved by his subsequent interrogation. The Court asked, "You ultimately listened to the other jurors, were convinced and persuaded by their argument and changed your vote based upon that collective analysis of the evidence, is that what you are telling us?" Clark replied, "Not really." The district attorney then put the question more directly, asking, "do you agree with their verdict as being your own?" Clark responded, "Not 100 percent, no."

¶ 41. By the time the district attorney was done with his interrogation, Clark had expressed his dissent to the verdict in three different ways: "No," "Not really," and "Not 100 percent, no." Yet, instead of granting a mistrial or returning the jury back for further deliberations, the circuit court asked, "Is there something that the Court can do to assist you?"

¶ 42. We are troubled by the nature and breadth of the circuit court's questions after Clark's initial dissent. Although its preliminary remarks were commendable,[6] and its intent well meaning, it simply went too far in this case. In continuing the questioning and

---

[6] Before interrogating Clark, the court stated the following:

First of all, I want to thank you for your forthrightness in answering the question, and I want to give you this caveat as well. Please understand that the inquiry that I would make or any voir dire that I might permit counsel to make of you should not be

357

polling after Clark dissented to the verdict, the circuit court unduly tainted the jury's deliberations. The rationale of *Brasfield* is applicable here:

> It can rarely be resorted to without bringing to bear in some degree, serious, although not measurable, an improper influence upon the jury, from whose deliberations every consideration other than that of the evidence and the law as expounded in a proper charge, should be excluded. Such a practice, which is never useful and is generally harmful, is not to be sanctioned.

*Brasfield*, 272 U.S. at 450.

¶ 43. Some of the court's questions went well beyond ascertaining the nature of Clark's response. To begin, the court strayed into dangerous territory by suggesting that it would accept Clark's verdict "as a result of a compromise or some other considerations." Clark should not be given the option of convicting Raye on anything other than the application of fact to law as stated in Wis. Stat. § 346.63(1)(b).

¶ 44. Moreover, the circuit court should not have asked Clark whether there was something it could do to "assist" him. Such a question is best left to the other jurors in the jury room. It is not a question, however, that a circuit court should be asking of a lone juror who

---

regarded by you as pressure being placed upon you by anybody to get you to change the way you have answered the questions propounded to you by the clerk.

You have to decide this verdict in the manner in which you as an individual juror perceives the evidence and decide individually. You can vote your conscience. Please don't allow us simply by the virtue of the fact we're making inquiry on or responding to your inquiry putting pressure on you.

We commend the effort by the circuit court to make the atmosphere less intimidating to Clark with these remarks.

dissents from the verdict. The potential for undue influence, even by a well-intentioned court, is simply too great.

¶ 45. We are also troubled by the circuit court's decision to continue the poll after Clark's dissent. Not only is this action not contemplated by the three available options, but also it unnecessarily revealed the numerical division of jurors, a practice disavowed by courts as immaterial and potentially coercive. *See, e.g., Brasfield,* 272 U.S. at 450; *McMahon,* 186 Wis. 2d at 91. If it is problematic to needlessly reveal the numerical split without identifying the jurors, then it is also problematic to needlessly continue with a poll following a dissent to publicly identify the other holdouts.

¶ 46. As noted in *United States v. Musto,* 540 F. Supp. 318, 339 (D.C.N.J. 1982):

> The purpose of polling a jury is to ensure that there is unanimity in the verdict. *United States v. Smith,* 562 F.2d 619, 621 (10th Cir. 1977). Once a juror registers dissent with the verdict, no purpose is accomplished by continuing the poll. In fact, a continuation of the poll will only invite later charges that the court had improperly inquired into the jury's numerical division and had thereby tainted the verdict. It is therefore wisest to discontinue the poll immediately upon learning that the jury's verdict is not unanimous. *See United States v. Warren,* 594 F.2d 1046, 1050 (5th Cir. 1979).

¶ 47. Circuit courts must be mindful of their actions when polling a jury. As the Supreme Court has recognized, " 'The influence of the trial judge on the jury is necessarily and properly of great weight,' and jurors are ever watchful of the words that fall from [the judge.]" *Bollenbach v. United States,* 326 U.S. 607, 612 (1946) (quoting *Starr v. United States,* 153 U.S. 614, 626 (1894)).

¶ 48. In the end, this case is about a circuit court that, in an attempt to help resolve a problem, went too far in its actions. The circuit court's continuation of the jury poll and individual questioning of the dissenting juror tainted the deliberation process. Given the totality of the circumstances, we cannot say with assurance that the jury freely and fairly arrived at a unanimous verdict.

## IV

¶ 49. In sum, we agree with Raye that he did not waive the issue presented. Furthermore, we determine that a new trial is warranted under the facts of the case. Here, the circuit court erroneously exercised its discretion by not granting a mistrial or directing the jury to deliberate further upon learning of a juror's dissent. The court's continuation of the jury poll and individual questioning of the dissenting juror, although well meaning, went too far, thereby tainting the deliberation process. Accordingly, we reverse the decision of the court of appeals and remand for a new trial.

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded to the circuit court for a new trial.