COURT OF APPEALS
DECISION
DATED AND FILED

December 10, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1436-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2020CF3225

IN COURT OF APPEALS
DISTRICT I

---

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

PHILLIP TIMOTHY BAILEY,

DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Milwaukee County: REBECCA A. KIEFER, Judge. *Affirmed*.

Before White, C.J., Donald, P.J., and Colón, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Phillip Timothy Bailey appeals from the judgment of conviction, entered upon jury's verdicts, for first-degree recklessly endangering

safety by use of a dangerous weapon, criminal damage to property, and disorderly conduct, each with domestic abuse assessments, and possession of a firearm by a convicted felon. He also appeals from the order denying his motion for postconviction relief without an evidentiary hearing. Bailey argues that his counsel was ineffective for failing to convey a plea offer before it expired and that the circuit court denied him his right to a fair trial when it rejected the jury's initial verdicts without investigating the source of a juror's dissent to the verdicts as they were read. We reject Bailey's arguments, and we affirm.

## BACKGROUND

¶2    This case arises from incidents in which the State alleged Bailey threatened the mother of his child in August 2020 in Milwaukee, and then threatened, chased in a vehicle, and shot at her in September 2020. The State charged him with first-degree recklessly endangering safety by use of a dangerous weapon, criminal damage to property, possession of a firearm as a convicted felon, and two counts of disorderly conduct, with various penalty enhancers for habitual criminality, domestic abuse, and repeat firearm crimes.

¶3    The case proceeded to a jury trial in September 2021. As a preliminary matter, the State informed the court that it gave trial counsel "an updated offer" of a plea negotiation. The prosecutor stated that the trial should be done that week "if the offer is not accepted." The trial commenced with the State presenting testimony from police officers and detectives as well as the victim, who testified about Bailey chasing her while they both drove through the north side of Milwaukee. She described calling 911 while Bailey tried to run her off the road, shot at her vehicle, and hit her taillight. The victim continued driving looking for help and drove into a fence in a yard. Bailey approached her car on foot; he broke

the driver's side window of her car by hitting it with a gun. The victim then drove off and ended up at the Milwaukee Police Department district three station. The victim's 911 call was played for the jury.

¶4 After deliberations, the jury returned with verdicts, which the court began to read to the courtroom. The court announced that the jury found Bailey not guilty for count one of disorderly conduct, guilty for count two of first-degree recklessly endangering safety, and not guilty for count three of possession of a firearm by a convicted felon. The bailiff interrupted the judge and informed the court that "[t]he foreperson says she might have a made–she made a mistake on that." The court responded, "Okay. Very good. So, ladies and gentlemen of the jury, it appears as though you need to retire again and continue deliberations." Due to the late hour, the court excused the jury for the day and instructed them to reconvene for deliberations the following morning.

¶5 Outside the presence of the jury, the circuit court addressed the issue:

> As I was reading the verdict forms that were returned to me, it became immediately apparent that the forms that were submitted were not the verdict of the jury. I am inclined to give them new verdict forms as to all counts, and return that to them tomorrow, so that they may complete verdict forms that comport to what their verdict is. I do not know what it was about what I was reading that alerted the foreperson that there was an error, but it was immediately clear as I was reading that what was given to me, although they appeared to be completed accurately, was not a reflection of their jury verdict.

After a sidebar with counsel, the court stated for the record that fresh copies of the verdict forms would be given to the jury. The court stated, "I don't know what verdict form it was that was incorrectly filled out. They did not tell me, but it was completely clear that something was wrong. I would like for them to have the

opportunity to get it right." The prosecutor and trial counsel agreed that new verdict forms were appropriate.

¶6      The following day on October 1, 2021, the jury returned a not guilty verdict for count one of disorderly conduct, which arose from the offense in August 2020, and guilty verdicts on counts two through five, which arose from the offenses in September 2020. The guilty verdicts consisted of: (2) first-degree recklessly endangering safety with use of a dangerous weapon, (3) possession of a firearm by a felon, (4) criminal damage to property, and (5) disorderly conduct. The jury was polled and all jurors averred it was their chosen verdicts. The court accepted the verdicts and entered the corresponding judgment of conviction.

¶7      In March 2022, the court sentenced Bailey for the four convictions to a term of imprisonment equaling twenty years, bifurcated as twelve years of initial confinement and eight years of extended supervision.[1]

¶8      In November 2022, Bailey moved for postconviction relief under WIS. STAT. RULE 809.30 (2021-22).[2] He argued that he was deprived of his Sixth Amendment right to the effective assistance of counsel when his counsel failed to inform him of a plea offer from the State before it expired. He also argued that his

---

[1] The court imposed the sentence as follows. For count two, twelve years of imprisonment bifurcated as seven years of initial confinement and five years of extended supervision, to be served consecutively to his revocation sentence. For count three, eight years of imprisonment, bifurcated as five years of initial confinement and three years of extended supervision, to be served consecutively to the revocation sentence and count two. For count four, nine months in the House of Correction to be served concurrently to counts two and three. For count five, ninety days in the House of Correction to be served concurrently to counts two and three.

[2] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

Fifth Amendment right to a fair trial was violated when the circuit court returned the jurors to deliberations after the court began to read the verdicts and the foreperson notified the bailiff there was a problem.[3] The circuit court denied his motion without a hearing.

¶9    Bailey now appeals. Additional facts related to his postconviction claims are included below.

## DISCUSSION

¶10    Bailey makes two arguments on appeal. First, he asserts that trial counsel's failure to convey a plea offer to Bailey before it expired deprived him of his right to the effective assistance of counsel. Second, Bailey argues that the circuit court erred when it sent the jurors to deliberate again when the foreperson told the bailiff there was a mistake. We conclude that neither argument compels relief, and we reject his claims.

### I.    *Ineffective assistance of counsel*

¶11    Bailey's claim of ineffective assistance of counsel requires making two showings:  that trial "counsel's performance was deficient," and that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To make a showing of deficient performance, "the

---

[3] In addition to the ineffectiveness claim related to plea bargaining in his postconviction motion, Bailey made two more ineffectiveness claims. First, he asserted that trial counsel failed to undertake a reasonable investigation into Bailey's claimed alibi defense. Second, he argued that trial counsel failed to object to the prosecutor's vouching for the victim's credibility and failed to move for a mistrial. We note that these claims were not renewed in his appeal, and we consider them abandoned. *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 491, 588 N.W.2d 285 (Ct. App. 1998).

defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. To show prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. We need not address both prongs of the ineffective assistance test if the defendant fails to make a sufficient showing on one. *Id.* at 697.

¶12 To succeed on this claim, Bailey's motion for postconviction relief must allege sufficient material facts to entitle him to an evidentiary hearing on his claim. *State v. Machner*, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979) (holding that an evidentiary hearing "preserv[ing] the testimony of trial counsel" was a prerequisite to an ineffective assistance of counsel claim). Whether a postconviction motion is sufficient on its face to entitle a defendant to a *Machner* hearing on an ineffective assistance of counsel claim is a question of law that this court reviews independently. *State v. Balliette*, 2011 WI 79, ¶18, 336 Wis. 2d 358, 805 N.W.2d 334.

¶13 "If the defendant's motion alleges sufficient and non-conclusory facts which would entitle the defendant to relief and the record does not conclusively establish otherwise, then the circuit court must hold a *Machner* hearing." *State v. Jackson*, 2023 WI 3, ¶8, 405 Wis. 2d 458, 983 N.W.2d 608. "[I]f the motion does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief, the circuit court has the discretion to grant or deny a hearing." *State v. Allen*, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433. We review the circuit court's decision to deny a postconviction

6

motion without a *Machner* hearing for an erroneous exercise of discretion. *State v. Ruffin*, 2022 WI 34, ¶28, 401 Wis. 2d 619, 974 N.W.2d 432.

¶14　The question before us is whether the circuit court erroneously exercised its discretion when it denied Bailey's ineffectiveness claim without a hearing. "[A] postconviction motion for relief requires more than conclusory allegations." *Allen*, 274 Wis. 2d 568, ¶15. A postconviction motion must allege "within the four corners of the [postconviction motion] itself," sufficient material facts about the "who, what, where, when, why, and how" of the claim to allow a reviewing court to "meaningfully assess" the claim. *Id.*, ¶23.

¶15　We turn to the substance of Bailey's postconviction motion to assess whether he alleged sufficient material facts to be entitled to a hearing. In his motion, Bailey argued that trial counsel failed to convey two plea offers to him, failed to confer with him about the State's final plea offer until the morning of trial, and failed to explain legal concepts underlying the possession charge. Bailey asserted that he had mistakenly believed that the police had to locate a firearm on his person in order to secure a conviction. Bailey alleged that if he had understood the elements of possession and had not been rushed to make a decision on a plea, he "probably" or "likely would have accepted the [S]tate's offer in order to avoid the risk of receiving a harsher sentence if the jury found him guilty for something he did not do[.]"

¶16　Bailey's motion described two of the State's offers.[4] The first offer was tendered on May 24, 2021, approximately four months before trial. In that

---

[4] We note that Bailey's affidavit asserts that the State tendered three plea offers. While two of the offers are discussed in detail, he makes no allegations about the third offer other than its existence.

offer, the State proposed that if Bailey took "full responsibility in this matter by pleading guilty to one misdemeanor count without the habitual enhancer, and count [two] without the while armed enhancer, before the matter is set for trial," the State would recommend certain costs and allow both sides to argue for an appropriate sentence. There is no reference in the record to whether the remaining counts would be read-in. Second, on the morning of trial, the State's final offer was Bailey agreeing to plead guilty "to the felon in possession of a firearm and criminal damage to property charges," and the State would dismiss and read in the remaining counts: two disorderly conduct charges and a first-degree recklessly endangering safety with use of a dangerous weapon charge.[5]

¶17    It is deficient performance for trial counsel to fail to communicate a formal plea offer to a defendant. The United State Supreme Court has held that "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 566 U.S. 134, 145 (2012). Under the record before us, trial counsel failed to present to Bailey at least two plea offers from the State. The State concedes that this was deficient performance. Therefore, Bailey's motion satisfied the showing of deficient performance.

¶18    However, Bailey's claim fails to make a showing of prejudice. To make a showing of prejudice when a plea offer was not presented because of trial counsel's deficient performance, "defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded

---

[5] The offer on the morning of trial, while referenced in the trial record, did not appear to be reduced to writing. Bailey's postconviction counsel attested that he had communicated with trial counsel, who described the State's final plea offer as set forth here.

8

effective assistance of counsel." *Id.* at 147. Additionally, defendants must "demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law." *Id.* In other words, "it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Id.*

¶19 Bailey argues that the State's May offer had a lesser penalty than what he was convicted of at trial, showing that the end result of the process would have been more favorable. If Bailey had accepted the May offer, Bailey would have pled guilty to a felony and a misdemeanor, instead, as a result of the trial, he was found guilty of two misdemeanors and two felonies. Further, he argues that he was sentenced to twenty years of imprisonment after trial, but the plea agreement would have reduced his exposure to twelve years and six months for the first-degree recklessly endangering safety felony and time in the House of Correction for one of the misdemeanors.[6] Thus, Bailey argues he has satisfied the pleading requirements of *Frye*.

¶20 In contrast, the State argues that Bailey's prejudice allegations are conclusory and insufficiently pled, in violation with the requirements for a postconviction motion under *Allen* and its progeny. First, Bailey's unnotarized affidavit does not state that he would have accepted the plea, but only that he was

---

[6] We note that Bailey does not develop arguments related to the misdemeanor counts. Our examination of the record shows that the disorderly conduct offenses only risk ninety days in the House of Correction for each count and nine months in the House of Correction for the property damage offense. Further, Bailey was charged with the two year habitual criminality penalty enhancer for each misdemeanor.

likely to do so. Second, Bailey does not explain why he was likely to accept the May offer but rejected the final offer on the morning of trial. The circuit court's decision denying Bailey's motion concluded that Bailey's motion only offered conclusory allegations and he did not set forth a sufficient explanation for why he would have accepted an earlier plea offer communicated to him when he rejected the offer on the day of the trial.

¶21     The State asserts that Bailey's postconviction motion did not state there was a reasonable probability that he would have accepted the May plea offer (or another earlier plea offer) because the motion stated only that he "probably" or "likely" would have accepted. Bailey responds that the State is splitting hairs over word usage. We disagree. Bailey's motion predicates his probable acceptance of the May offer not on the terms of the State's offer of reduced convictions and prison exposure but on correcting his mistaken understanding of the law. Bailey does not explain how the presentation of the May offer would have led to correcting his understanding of the elements of a firearm possession charge. Bailey's motion does not "demonstrate a reasonable probability [he] would have accepted the earlier plea offer" had counsel's performance not been deficient in failing to present it. *Frye*, 566 U.S. at 147.

¶22     The State argues that Bailey's postconviction motion does not explain why he would have accepted the May offer but refuse the final offer on the morning of the trial.[7] The State argues that its final offer was a better deal than the

---

[7] Bailey argues that his pleading was sufficient because he contrasted the plea offer not presented with the final result of trial. The factual scenarios in *Missouri v. Frye*, 566 U.S. 134, 138-39 (2012), in which counsel did not present any plea offers prior to expiration, differs significantly from Bailey's. In *Frye*, the defendant was deprived of any option to enter a plea. Id. at 139. Here, Bailey was presented a plea offer prior to trial.

May offer; therefore, Bailey's failure to take the final offer showed that there was not a reasonable probability of him taking the plea deal if it had been promptly offered.[8]

¶23    Bailey's motion focused on comparing the May offer to the result after trial, but he did not allege why or how the May offer was superior to the final offer. Even if we read his motion in the most favorable light, Bailey does not explain what or why modest differences between the May and final offers would have motivated him to accept a plea in May that he did not accept on the morning of trial. At most, Bailey alleged feeling rushed on the morning of trial, but his primary complaint was not understanding the elements of the possession charge. We conclude that his allegations of prejudice arising from the plea offer not being presented in May are conclusory.

¶24    Bailey argues that the circuit court erred when it concluded that he failed to allege his reasoning for refusing the State's final offer at trial. He argues that his "reasoning would undoubtedly be explored at an evidentiary hearing, but nothing in *Frye* requires its inclusion in his motion for relief." Bailey misunderstands Wisconsin's postconviction pleading standard to be entitled to an evidentiary hearing on an ineffectiveness claim. There is no question that *Frye* establishes that trial counsel was deficient for failing to present the earlier offers. But *Frye* does not negate Bailey's need to provide material factual allegations to

---

[8] Bailey appears to accept the State's contention that the final offer was more favorable than the May offer. Our examination of the record suggests that the May and final offers were substantially similar, with undeveloped arguments about the impact of the misdemeanor counts. We will not develop arguments for either party, and we proceed with the general acceptance that the final offer was a better offer. *See State v. Pettit*, 171 Wis. 2d 627, 647, 492 N.W.2d 633 (Ct. App. 1992) ("We cannot serve as both advocate and judge.").

show both deficiency and prejudice to allow for meaningful review of his claim. *Allen*, 274 Wis. 2d 568, ¶23. A *Machner* hearing is a forum to prove factually-supported allegations, not a fishing expedition to discover them. *Balliette*, 336 Wis. 2d 358, ¶68. Bailey has not made the requisite factually-supported material allegations.

¶25 We conclude that because Bailey has failed to make a showing of prejudice in his ineffectiveness claim, his claim fails. Therefore, the circuit court reasonably exercised its discretion when it denied his postconviction motion without a hearing.

## II. *Fifth Amendment right to a fair trial*

¶26 Bailey's second argument is that the circuit court's rejection of the jury's initial verdict denied him his Fifth Amendment right to a fair trial. He argues that the court erred when it failed to question any jurors at the time about their issues with the original verdicts, because under Wisconsin law, the court had to determine if the juror's statement was an "unambiguous dissent" or an "ambiguous or ambivalent" statement under *State v. Cartagena*, 140 Wis. 2d 59, 62, 409 N.W.2d 386 (Ct. App. 1987). He argues that only in the case of an unambiguous dissent may the court direct the jury to continue deliberating or else declare a mistrial if further deliberations would be fruitless. He contends that barring unambiguous dissent by a juror, the original verdict for count three should have stood.

¶27 The circuit court concluded that its handling of the juror's objection to the verdicts as they were read and its subsequent actions to resubmit the verdict forms to the jury and poll the jury were not in error. The court rejected Bailey's postconviction claim that his right to a fair trial has been violated.

¶28 We review the circuit court's actions here for an erroneous exercise of discretion. *State v. Raye*, 2005 WI 68, ¶16, 281 Wis. 2d 339, 697 N.W.2d 407. "An erroneous exercise of discretion may arise from an error in law or from the failure of the circuit court to base its decisions on the facts in the record." *Id.*

¶29 The State argues that Bailey has forfeited this argument by failing to request jury polling or to object to the circuit court's course of action at the time the court stopped reading the verdicts and directed the jurors to continue deliberations. *See State v. Cydzik*, 60 Wis. 2d 683, 696, 211 N.W.2d 421 (1973) (holding that trial counsel's failure to request jury polling when given the opportunity waived the issue). We decline to apply the forfeiture rule and address the merits, as did the circuit court in its postconviction decision. While we acknowledge trial counsel could have raised a contemporaneous objection, we also acknowledge that Bailey could have instead addressed the claim "in the context of ineffective assistance of counsel." *State v. Counihan*, 2020 WI 12, ¶¶28, 32, 390 Wis. 2d 172, 938 N.W.2d 530. Ultimately, we conclude that the circuit court's response to the juror's concern about the verdict complied with Wisconsin law and was not an erroneous exercise of direction.

¶30 "The right to trial by jury protected by the state constitution includes the right to a unanimous verdict in criminal trials." *Raye*, 281 Wis. 2d 339, ¶17. "The right to poll the jury at the return of the verdict is a corollary to the defendant's right to a unanimous verdict." *State v. Behnke*, 155 Wis. 2d 796, 801, 456 N.W.2d 610 (1990).

¶31 Under Wisconsin law, a circuit court has certain options when it is not clear there is an unambiguous assent from all jurors to a verdict. If the court determines that an assent or dissent to the verdict is ambiguous, the court may

seek clarification from the juror, either in the courtroom, or outside of the presence of the other jurors. *Raye*, 281 Wis. 2d 339, ¶35. If the court determines there is unambiguous dissent, then the court may "send the jury back for continued deliberations" or "determine that further deliberations would be fruitless and grant a mistrial." *Id.*, ¶32.

¶32 The record reflects that the circuit court was informed in open court that the verdicts the court was reading were not correct in some way. The court made a thorough record that it was "immediately apparent that the forms that were submitted were not the verdict of the jury." The court noted it was "immediately clear" that there was a problem, and while the court was not aware what was incorrect, "it was completely clear that something was wrong." The circuit court is in a better position to assess demeanor in the courtroom than an appellate court reviewing the transcript. *See State v. Oswald*, 2000 WI App 3, ¶5, 232 Wis. 2d 103, 606 N.W.2d 238 (stating that the circuit "court is in the unique position to assess … demeanor and tone"). Under the facts and circumstances of this case, the court did not need to conduct jury polling to determine that at least one juror had an unambiguous disagreement with the verdicts as they were read. Therefore, the court acted according to the law and reasonably exercised its discretion when it returned the jury to deliberations with fresh verdict forms. *Raye*, 281 Wis. 2d 339, ¶¶32, 37.

¶33 Bailey appears aggrieved that the verdict on count three changed from not guilty to guilty; however, "the verdict is the agreement which the jurors reach in their deliberations and not the written paper which is filed if, through a clerical error or otherwise, that does not express the jurors' agreement." *Brophy v. Milwaukee Elec. Ry. & Transp. Co.*, 251 Wis. 558, 566, 30 N.W.2d 76 (1947). The circuit court's decision to have the jurors return to deliberations ensured that

14

the jury's verdicts would be presented in court and the jurors polled on their assent. Under these circumstances, the original written paper forms should not supersede the juror's unambiguous dissent made through the bailiff.

¶34 We conclude that Bailey's Fifth Amendment right to a fair trial was not violated by how the circuit court handled the juror's dissent as the verdicts were read. "[A]t any time before a verdict is received and properly recorded, a juror may dissent although previously agreeing." *Cartagena*, 140 Wis. 2d at 61. Here, a juror had a bailiff interrupt the reading of the verdicts in open court. The verdicts for all five counts had not yet been read into the record. We conclude that the circuit court's actions were not an erroneous exercise of discretion and in fact, the court's prompt reaction protected Bailey's right to a fair trial.

## CONCLUSION

¶35 For the reasons stated above, we conclude that Bailey's claims fail. He has not shown that he received ineffective assistance of counsel and his conclusory allegations do not entitle him to a *Machner* hearing. We conclude that the circuit court's decision to return the jurors to deliberations after a juror dissented as the verdicts were read were not an erroneous exercise of discretion. Accordingly, Bailey's Fifth Amendment right to a fair trial was not violated.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.