COURT OF APPEALS
DECISION
DATED AND FILED

August 22, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2021AP2166-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2018CF4936

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

EDWARD HERMAN MCKAY,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: GLENN H. YAMAHIRO, Judge. *Affirmed*.

Before White, C.J., Donald, P.J., and Dugan, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Edward Herman McKay appeals from the judgment, entered upon a jury's verdict, for one count of theft from a person. He argues that the circuit court erred when it denied his motion for mistrial. McKay also appeals the circuit court's decision to deny his postconviction motion without a hearing based on his allegation that his trial counsel was ineffective. Finally, he argues that he should be granted a new trial in the interest of justice. We reject his arguments and we affirm.

## BACKGROUND

¶2     This case arises out of J.S.'s report to the police that, while standing in his front yard, a man approached him and stole two necklaces from him on June 8, 2018. In the course of investigating a different theft, the police developed McKay as a suspect. J.S. identified McKay in a photo identification array. The police further obtained surveillance video footage of the theft from a neighbor's video camera.

¶3     Although McKay was charged with a second theft and that charge was scheduled—but not officially joined—for the same trial, on the morning of the scheduled trial on March 9, 2020, the second theft was dismissed and the trial proceeded on only the theft from J.S. Before voir dire, two conversations relevant to this appeal occurred. First, McKay argued to the circuit court that the photo array was "highly suggestive." He asserted that the police had "a photo array where [he] was the only light-skinned guy on there." When the court asked why McKay was only raising this issue now, McKay stated, "I have been telling [trial counsel] this for the longest." Trial counsel stated that he planned to challenge the identification at trial and the circuit court ascertained that it was trial counsel's

"professional decision" that a motion to suppress or exclude the identification lacked merit.

¶4     The second issue was the dismissed second case.  Trial counsel confirmed with the court that the "officers will be instructed only to testify to the fact that Mr. McKay was developed as a suspect in this offense occurring in June of 2018 and he was developed at a later point in time."  With the prosecutor's assent, the circuit court stated:  "We don't want any references to the other case."  The prosecutor affirmed, "I will instruct my officers to not reference the case that was dismissed this morning."

¶5     The case proceeded to trial; the State called the police officer who responded to J.S.'s theft complaint on June 8, 2018.  During the officer's testimony, the neighbor's surveillance video camera footage was played for the jury.  The officer testified that in one segment, "the suspect in this incident reached over the fence—the victim's fence, he grabbed the victim's chest, and then he ran away."

¶6     J.S. testified that on June 8, 2018, he was standing in his front yard waiting for a friend when a man passed by his yard and they engaged in a brief conversation.  The man told J.S. he could not hear him, so J.S. approached, the man asked about a dog and about cigarettes.  When J.S. denied having cigarettes, the man moved his own sweatshirt and "jumped to grab [J.S.'s] jewelry and he ran."  J.S. testified that the man stole two pendants and two gold chains that he had for a long time.

¶7     J.S. testified that he provided a physical description of the man to the police:  he was bald, he had darker skin, and he had a beard.  In August 2018, two police officers came to J.S.'s house and showed him multiple photos of possible

suspects—J.S. identified McKay as the man who took his property. He identified the suspect based on his eyes. He picked a photo and testified that the officer "congratulated" him because that person was the one the police had apprehended.

¶8    During cross-examination, J.S. was asked if he talked about the thief's request for a cigarette when he was doing the photo array with the police in August 2018. J.S. stated, "Yes. Because he told me that the person that they had caught had asked something about cigarettes." After a sidebar with the court, the court ordered J.S.'s last answer stricken from the record.

¶9    On the second day of trial, McKay requested to represent himself for the remainder of the trial. The court allowed this but retained trial counsel on standby. McKay continued the cross-examination of J.S.

¶10    The State next called an officer who administered the photo identification array to J.S. The officer testified about the development of a photo array, explaining that the booking database provides photos of people similar to the suspect and then five photos plus the suspect's photo are placed in separate folders for the witness to review. The officer explained the steps taken to ensure that the person administering the identification array does not know which folder contains the suspect's photo. The officer testified that J.S. identified a photo of McKay as the "subject that robbed" him.

¶11    During cross-examination, McKay asked the officer about the process by which the booking database provided photos based on the demographic criteria the officer searched; the officer testified that he manually chose the photos from the photos suggested by the database. McKay then asked the officer the following:

> [McKAY:] I got another question I want to ask you. I want to ask you about the initial contact with [J.S.] What description did he provide of the perpetrator?
>
> [THE OFFICER:] It was conveyed to me, by [another officer], that there were three crimes matching the general description in motive that had a similar suspect in age, height, weight –
>
> [McKAY:] I object to that.

The court held a sidebar with counsel and then sustained McKay's objection and told the jury to disregard the last answer. Finally, the officer denied that he congratulated J.S. at the end of the identification process.

¶12 Out of the presence of the jury, McKay moved for a mistrial, arguing the officer's statement was prejudicial. The prosecutor explained that she thought the officer was confused by the cross-examination question, that it was a brief mention of three crimes, and the testimony during the cross-examination was "all around unclear." McKay argued that the officer violated the court's order and that the jury would not be able to forget or ignore the reference to him committing other crimes.

¶13 After a brief recess during which the court considered the testimony in the transcript, the circuit court denied McKay's motion for mistrial. The court reviewed that the officer's "testimony was that there were three crimes matching the general description in motive that had a similar suspect in age, height, and weight" and the court had ordered that "the other case, an incident connected to that, not be referenced in any way." The court stated that while it would have "preferred that this language had not been included" in the testimony, the officer did not say that McKay was "suspect in three other cases." In fact, the "general description regarding age, height, and weight … could match hundreds, if not thousands, of individuals in this community." The court further considered that it

5

ordered the jury to disregard the answer. The court concluded that its order had not been "violated with respect to referencing the other case that has now been dismissed."

¶14     The trial then proceeded to the defense case, with McKay testifying that he was innocent of the charges, that he had never been at that location, and that he did not match the description of the suspect.

¶15     At the jury instruction conference, the court discussed with McKay whether a curative instruction about the officer's reference to the other cases could risk drawing attention to the issue. However, during the closing jury instructions, the court did address the issue of stricken testimony as follows:

> Disregard entirely any question the court did not allow to be answered. Do not guess at what the witness's answer might have been. If the question itself suggested certain information might be true, ignore the suggestion and do not consider it as evidence.
>
> During the trial, the court has ordered certain testimony to be stricken. Disregard all stricken testimony.

¶16     The jury returned a guilty verdict on the charge of theft from person. At the sentencing hearing, the circuit court imposed a sixty month sentence, evenly bifurcated between initial confinement and extended supervision.

¶17     McKay moved for postconviction relief, arguing that trial counsel had provided ineffective assistance for failing to move to suppress J.S.'s identification of McKay in the police photo array. The circuit court denied this motion without a hearing. This appeal follows.

**DISCUSSION**

¶18    McKay makes three arguments on appeal.  First, he contends that the circuit court erred in denying his motion for mistrial.  Second, he argues that his postconviction motion sufficiently alleged ineffective assistance of counsel and he is entitled to an evidentiary hearing.  Third, he asserts that a new trial is warranted in the interest of justice because the true controversy was not tried.

*I.    Mistrial*

¶19    McKay argues that the testimony suggesting he committed other crimes merited a mistrial and the circuit court erroneously exercised its discretion by denying his motion.  "When faced with a motion for mistrial, 'the circuit court must decide, in light of the entire facts and circumstances, whether ... the claimed error is sufficiently prejudicial to warrant a mistrial.'"  *State v. Debrow*, 2023 WI 54, ¶15, 408 Wis. 2d 178, 992 N.W.2d 114 (quoting *State v. Ford*, 2007 WI 138, ¶29, 306 Wis. 2d 1, 742 N.W.2d 61).  "We review a circuit court's decision to grant or deny a motion for mistrial for an erroneous exercise of discretion."  *Debrow*, 408 Wis. 2d 178, ¶15.  "An erroneous exercise of discretion may arise from an error in law or from the failure of the circuit court to base its decisions on the facts in the record."  *State v. Raye*, 2005 WI 68, ¶16, 281 Wis. 2d 339, 697 N.W.2d 407.

¶20    McKay contends that J.S.'s testimony referencing another "person that [the police] caught" and the officer's testimony that there were "three crimes matching the general description" prejudicially introduced other-acts evidence that suggested a propensity for crime.  Generally, Wisconsin law forbids "evidence of other crimes, wrongs, or acts … to prove the character of a person in order to show that the person acted in conformity therewith."  WIS. STAT. § 904.04(2)(a) (2021-

7

22).[1]  Here, the circuit court directly instructed, and the State agreed, that there would be no references to other acts alleged to have been committed by McKay. Although we acknowledge McKay's perspective that this testimony constituted other-acts evidence, we agree with the circuit court's assessment that the references were not specific or detailed enough to clearly suggest McKay committed other crimes.  We note that the jury remained unaware of the second, dismissed charge.

¶21     We conclude that the circuit court did not erroneously exercise its discretion when it determined, in light of the facts and circumstances of the case, that the officer's testimony about three other crimes was not so prejudicial as to warrant a mistrial.  *See **Debrow***, 408 Wis. 2d 178, ¶16.  The circuit court demonstrated the appropriate process of reasoning when it denied the motion for mistrial.  It considered arguments and counterarguments from both the State and McKay, who was representing himself at this stage of trial.  It considered McKay's concern that merely striking the testimony would not "take it out of their head[s]."  But after reviewing the facts, the court noted that the officer did not testify that McKay was a "suspect in three other cases."  While the court concluded that a more specific description might have weighed more in favor of mistrial, here the match was only to a "general description regarding age, height, and weight," which "could match hundreds, if not thousands, of individuals in this community."

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

¶22 In addition to striking the officer's testimony, the circuit court instructed the jury not to weigh stricken testimony or to speculate about it, in the final instructions prior to deliberations. When the circuit court "gives the jury a curative instruction, this court may conclude that such instruction erased any possible prejudice, unless the record supports the conclusion that the jury disregarded the [circuit] court's admonition" about stricken testimony and speculation. *See* **State v. Sigarroa**, 2004 WI App 16, ¶24, 269 Wis. 2d 234, 674 N.W.2d 894.

¶23 McKay argues that the instructions did not address propensity and other-acts evidence, and that the officer's testimony on top of J.S.'s remark about another crime means that the instructions offered to the jury were not enough to overcome the prejudicial effect of the officer's testimony. The record does not reflect that McKay requested an other-acts evidence jury instruction, and the failure to object at the jury instruction conference forfeits that issue before this court. *See* WIS. STAT. § 805.13(3) ("Failure to object at the conference constitutes a waiver of any error in the proposed instructions or verdict.").[2] Further, "[j]urors are presumed to have followed jury instructions, **State v. LaCount**, 2008 WI 59, ¶23, 310 Wis. 2d 85, 750 N.W.2d 780, and the record does not support that the jury disregarded the court's instructions.

¶24 Ultimately, we conclude that the circuit court demonstrated appropriate reasoning based on the facts and circumstances of the case when it

---

[2] "[T]he court of appeals has no power to reach an unobjected-to jury instruction because the court of appeals lacks a discretionary power of review." **State v. Trammell**, 2019 WI 59, ¶25, 387 Wis. 2d 156, 928 N.W.2d 564,.

denied McKay's motion for mistrial. The court offered the appropriate curative instructions to the jury. We reject McKay's request for a new trial.

*II.* *Ineffective assistance of counsel*

¶25 McKay's second argument is that trial counsel was ineffective for failing to move to suppress the identification array and J.S.'s identification of him. A pretrial photographic identification violates a defendant's due process rights when it is "impermissibly suggestive and not otherwise reliable." *See* *State v. Mosley*, 102 Wis. 2d 636, 649-50, 307 N.W.2d 200 (1981). To prove ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that the defendant was prejudiced by counsel's performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

¶26 Whether an out-of-court identification violates due process is a question of constitutional fact. *See* *State v. Roberson*, 2019 WI 102, ¶66, 389 Wis. 2d 190, 935 N.W.2d 813. A question of constitutional fact is a mixed question of fact and law, which requires us to engage in a two-part inquiry: we will uphold the trial court's findings of fact unless they are clearly erroneous, but we independently review whether those evidentiary facts satisfy the constitutional standard. *State v. McMorris*, 213 Wis. 2d 156, 165, 570 N.W.2d 384 (1997). Similarly, our review of an "ineffective assistance of counsel claim is a mixed question of law and fact." *State v. Dalton*, 2018 WI 85, ¶33, 383 Wis. 2d 147, 914 N.W.2d 120.

¶27 At the outset, we address McKay's assertion that his postconviction motion alleged sufficient material facts to show that counsel's representation was

ineffective; therefore, he is entitled to a **Machner**[3] hearing to determine the issue. *See* **State v. Jackson**, 2023 WI 3, ¶8, 405 Wis. 2d 458, 983 N.W.2d 608. Our standard to review a claim that the circuit court erred when it denied a postconviction motion without a hearing is a two step-process. "First, we assess whether the motion on its face alleges sufficient material and non-conclusory facts that, if true, would entitle the defendant to relief." *Id.* "Second, we determine whether the record conclusively demonstrates that the defendant is not entitled to relief." *Id.*

¶28 For McKay's claim that he is entitled to a **Machner** hearing to succeed, he would need to show that he alleged sufficient material facts that the photo array identification was impermissibly suggestive; therefore, his attorney was deficient for failing to move to suppress the identification and that this deficient performance prejudiced his defense. Accordingly, our first inquiry is whether McKay can meet his burden to show that the identification was impermissibly suggestive. *See* **Mosley**, 102 Wis. 2d at 652 ("The first inquiry is whether the out-of-court photographic identification was impermissibly suggestive, as to which the defendant has the burden. If this burden is not met, no further inquiry is necessary.").

¶29 McKay contends that the photo identification array was impermissibly suggestive because his skin tone was lighter than the other men presented and the way the photo was taken made his face "shine" more than the other men. In its written decision denying McKay's postconviction motion, the circuit court stated that it "reviewed the photo array lineup[.]" The court noted

---

[3] **State v. Machner**, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979).

that all six photos "depict[ed] African American males with similar facial hair. All of the photos depict males who are bald or nearly bald." The court further noted that while McKay's "face appears brighter" than the other men in the photos, his face did "not inordinately appear so … as to suggest him as the perpetrator." The court concluded that all of the men's faces had "some amount of 'shine' on their faces, presumably due to factors relating to picture development." We conclude that the circuit court's fact finding is not clearly erroneous. Our review of the record supports that McKay did not stand out improperly. Moreover, J.S. testified that he recognized McKay by his eyes, not the brightness of his face.

¶30 We further conclude that even if we had concerns about impermissible suggestiveness of the photo, the identification itself was sufficiently reliable. When we evaluate the reliability of such an identification, we consider factors including:

> [T]he opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Neil v. Biggers*, 409 U.S. 188, 199-200 (1972). The State argues that there is sufficient evidence in the record to conclude that J.S.'s identification of McKay was reliable. First, J.S. had ample opportunity to witness the thief before the crime, while they were conversing at a short distance apart for several minutes before anything happened. Second, J.S. was standing close to the thief, within several feet and J.S. testified he could clearly see the thief's face. Third, J.S.'s degree of attention allowed him to provide a fairly detailed description of the

suspect. Fourth, J.S. was confident in his identification with police, stating that was the person as soon as he opened the folder.

¶31 Additionally, McKay asserted that the officer who conducted the photo array identification with J.S. did not follow model practices and procedures for eyewitness identification. As the circuit court concluded, the model rules do not have the force of law and there is no evidence that the officer's conduct during the identification was suggestive or influenced the victim's identification. Although the record reflects that the officer denied congratulating J.S. about the identification, J.S. did testify about the officer congratulating him. However, even if we presume that the congratulations occurred, J.S. testified that the congratulations happened after the identification was complete, not during his review of the photo array. We again do not find the court's findings clearly erroneous. Our independent review does not support that the facts of the pretrial identification violated McKay's due process rights. *See Mosley*, 102 Wis. 2d at 652.

¶32 Because we conclude that the pretrial out-of-court identification was not impermissibly suggestive, we conclude that a motion to suppress would have been meritless. As our supreme court stated, "[c]ounsel does not perform deficiently by failing to bring a meritless motion." *State v. Sanders*, 2018 WI 51, ¶29, 381 Wis. 2d 522, 912 N.W.2d 16. Accordingly, we conclude that trial counsel's performance was not deficient for failing to file a motion to suppress the identification. Further, because McKay has failed to make a showing on the deficiency test, we decline to address the issue of prejudice. *Id.*, ¶30. Therefore, McKay's ineffective assistance of counsel claim fails.

¶33 Moreover, because the record conclusively demonstrates that McKay's ineffective assistance of counsel claim fails, the circuit court acted within its discretion to deny his motion for postconviction relief without a hearing. *See Jackson*, 405 Wis. 2d 458, ¶8.

### III. *New trial in the interest of justice*

¶34 McKay's final argument is that he is entitled to a new trial in the interest of justice. He asserts that the real controversy has not been tried because of the erroneous introduction of other-acts evidence, the erroneous admission of the pretrial photo identification by J.S., and the erroneous admission of evidence that McKay possessed a firearm during the theft.

¶35 This court may order a new trial pursuant to WIS. STAT. § 752.35 when the real controversy has not been fully tried or when it is probable that justice has miscarried. "The power to grant a new trial in the interest of justice is to be exercised 'infrequently and judiciously.'" *State v. Avery*, 2013 WI 13, ¶38, 345 Wis. 2d 407, 826 N.W.2d 60 (citation omitted).

¶36 We have rejected McKay's first two arguments above and we decline to address them again. As for McKay's third argument, we return to the record. When trial counsel cross-examined J.S., the following exchange happened:

> [TRIAL COUNSEL:] Did you also tell the officers on June 8th that when you told the person that you did not have a cigarette, that that person then pulled out a gun and pointed it at you?
>
> [J.S.:] No. He never pointed it at me. He never pulled it out. He just went like this and then he told me not to move, and that is when he jumped and he grabbed my chains.

¶37     On appeal, McKay argues that trial counsel "opened the door" to harmful testimony by J.S. by asking this question.[4]   The record reflects that the initial criminal complaint included J.S.'s report that the thief "pulled out a firearm with his right hand and grabbed [J.S.'s] necklace with his left hand.   The defendant held the gun to [J.S.'s] head while pulling the necklace from his neck."   At trial, the State played the neighbor's surveillance video camera footage, also referenced in the complaint, which did not clearly show that McKay had a weapon.   Further, the original charge of armed robbery was changed to theft from person prior to trial.

¶38     McKay asserts that discussion of the firearm was not relevant to the charge and was unfairly prejudicial.   In its postconviction decision, the circuit court concluded that:

> While the references to a firearm were not necessary to prove the elements of the offense, the court is not persuaded that they so clouded the central issue of identification that it may be fairly said that the real controversy was not fully tried or that the guilty verdict is the result of a miscarriage of justice.

¶39     We agree with the circuit court that the references to a firearm did not prevent the real controversy from being fully tried or result in a miscarriage of justice.   This court's power of discretionary reversal is limited to "*exceptional*

---

[4] The record reflects that trial counsel asked these questions about firearms in cross examination, during a series of questions that attempted to show inconsistencies in J.S.'s account of the theft and discredit his testimony.   The State suggests that there are strategic reasons for counsel's line of questioning.   McKay responds that any consideration of a strategic reason for trial counsel's actions would be relevant only in an ineffective assistance of counsel claim, but is not relevant to the interest of justice claim.   We are mindful of our supreme court's instruction to this court not to use the discretionary power of reversal to "shortcut [established] procedures … when there is no apparent reason for doing so[.]"   **State v. Kucharski**, 2015 WI 64, ¶43, 363 Wis. 2d 658, 866 N.W.2d 697 (citation omitted).

cases." ***State v. McKellips***, 2016 WI 51, ¶52, 369 Wis. 2d 437, 881 N.W.2d 258. To consider whether a case is one of the few requiring discretionary reversal, this court "must engage in 'an analysis setting forth the reasons' that the case may be characterized as exceptional." ***Id.*** (citation omitted). In this case, we are unable to state why this case is exceptional and we conclude that the controversy was fully tried. Therefore, we reject McKay's final claim.

## CONCLUSION

¶40    For the reasons stated above, we conclude that the circuit court acted within its discretion when it denied McKay's motion for mistrial and denied McKay's postconviction motion alleging ineffective assistance of counsel without a hearing. Further, we conclude that the real controversy was fully tried and McKay is not entitled to a new trial in the interest of justice.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.