# COURT OF APPEALS
## DECISION
## DATED AND FILED

## November 7, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos. 2020AP1751**
**2020AP1752**
**STATE OF WISCONSIN**

Cir. Ct. Nos. 2020JI82
2020JI83

## IN COURT OF APPEALS
## DISTRICT I

IN THE INTEREST OF G.F., A PERSON UNDER THE AGE OF 18:

COURTNEY ROELANDTS GUARDIAN AD LITEM,

PETITIONER-RESPONDENT,

V.

C. F.,

RESPONDENT-APPELLANT.

IN THE INTEREST OF J.F., A PERSON UNDER THE AGE OF 18:

COURTNEY ROELANDTS GUARDIAN AD LITEM,

PETITIONER-RESPONDENT,

V.

C. F.,

RESPONDENT-APPELLANT.

APPEALS from orders of the circuit court for Milwaukee County: KASHOUA KRISTY YANG, Judge. *Affirmed in part, reversed in part and cause remanded with instructions.*

Before White, C.J., Donald, P.J., and Dugan, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Christopher appeals the orders enjoining him from contact with his children, Gregory and Jessica, for a period of five years pursuant to WIS. STAT. § 813.122(5)(dm) (2021-22).[1] Christopher argues that the circuit court failed to make the necessary factual findings to support its conclusion that there were reasonable grounds to believe Christopher abused or will abuse his

---

[1] We employ pseudonyms for the family members at issue in this case to preserve confidentiality. *See* WIS. STAT. §§ 809.19, 809.86 (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted. We note that these appeals were consolidated.

children. We conclude that the circuit court's findings were sufficient to support granting the injunctions and affirm those parts of the orders. However, the circuit court's findings to support the length of the injunctions are insufficient. We reverse those parts of the orders and remand to the circuit court with instructions to exercise discretion in describing what length of injunction was appropriate, with appropriate factual findings to support its reasoning.

## BACKGROUND

¶2 Attorney Courtney Roelandts, serving as guardian ad litem for Gregory and Jessica in a CHIPS proceeding (hereinafter, the GAL), filed petitions for a temporary restraining order (TRO) against Christopher in May 2020.[2] The petitions alleged that Christopher had physically, sexually, and emotionally abused the children and requested injunctions for five years because there was a substantial risk that he may commit first, second, or third-degree sexual assault against the children. According to the petitions, Jessica was born in October 2009 and Gregory was born in January 2011. Jessica disclosed sexual abuse in November 2019, alleging that Christopher abused her between the ages of three and seven. Gregory disclosed abuse in January 2020, alleging that Christopher made him and Jessica have sex.

¶3 After the TROs were granted, the circuit court proceeded to injunction hearings on June 8, June 24, July 16, and July 17, 2020. The final hearing date was the court's oral ruling, which began by finding credible the

---

[2] "CHIPS is the commonly used acronym to denote the phrase 'child in need of protection or services' as used in the Wisconsin Children's Code, chapter 48, Stats." *Marinette Cnty. v. Tammy C.*, 219 Wis. 2d 206, 208 n.1, 579 N.W.2d 635 (1998). The underlying CHIPS case is not before us in this appeal.

testimony of the ongoing case manager and then the court discussed the facts it found persuasive. The case manager was involved in the underlying CHIPS case beginning in 2018. The case manager testified that she was present for Jessica's forensics interview after her disclosure of sexual abuse. Jessica disclosed that her father "would stick his fingers into her vagina causing her pain when he did it." In January 2020, Gregory disclosed that he was "forced by [Christopher] to follow [Jessica] and touch her inappropriately."

¶4 The court found that after their abuse disclosures, "the children have not visited [Christopher], and both have refused to visit with him." "When approached about visitation, [Jessica] was borderline [in] tears and stated that her dad makes her feel worse, and [Gregory] stated that his father badgered him." The children also refused to attend family therapy. The court found that Jessica "had been in-patient at Rogers Milwaukee Behavioral Health five times due to suicidal ideation and aggressive behaviors with the most recent in-patient stay being May 2020." Jessica had psychotic episodes and engaged in self-harm while there.

¶5 The court also considered Christopher's testimony. The court stated that Christopher testified that his last contact with Jessica and Gregory's therapist was in summer 2018. The court found that Christopher knew the rules regarding contact with Jessica while she was in in-patient care and he disregarded those rules. The court found that despite having the information about the children's therapists and that wraparound care was added to the CHIPS case after the summer of 2018, Christopher claimed he did not know that Jessica had a new therapist, nor had he made any attempts to contact the therapist. The court found "incredible [Christopher's] desire, as he expressed it, to support the children with respect to dealing with the trauma at the time when it was appropriate."

¶6      The court found the expert testimony of the forensics interviewer "to be credible" and found that "she conducted the forensic interviews of [Jessica and Gregory] consistent with the forensic interview guidelines." The court found that the forensics interviewer's testimony helped the court understand why and when children disclose sexual abuse. In the interviewer's professional experience and training, she explained "that young children do not disclose until they are able to recognize it as abuse, or until they are safe to do so" and children often delay disclosure when "abused by a close family member." The court found that while "[t]here were periods of time … where [Jessica] did not want to name her perpetrator, but all the times, she was clear on whom the perpetrators were." The court found that the forensics interviewer asked both Jessica and Gregory "if they were told what to say in the forensic interviews to which [Jessica] stated she was told by her mother to tell the truth, and [Gregory's] response to this inquiry was that no one told him what to say."

¶7      The court stated that it "reviewed the forensic interviews" and found the statements of both Jessica and Gregory "referring to sexual abuse by their father … to be quite disturbingly specific." The court found that Jessica described the approximate time periods of the abuse, where it occurred, how it felt, and how she felt afterward. The court found that Jessica and Gregory both disclosed in the interviews that Christopher made them have sex on multiple occasions. Gregory spelled out the word "sex" using toys in the interview room. Gregory also reported that his father would beat him with the metal part of a belt if he did not do as instructed.

¶8      The court found that the GAL had met her burden and granted the petitions for injunctions against Christopher. The court then found that "by a preponderance of the evidence" that there was "a substantial threat that

[Christopher] may commit second-degree sexual assault of the children victims." Based on its fact finding, the court found that the GAL met her burden to establish a "five-year injunction against the father," and set orders of no visitation.

¶9      Christopher now appeals.

## DISCUSSION

¶10     A child abuse injunction may be granted at the circuit court's discretion, if it determines, after a hearing, that there are "reasonable grounds to believe that the respondent has engaged in, or based upon prior conduct of the child victim and the respondent may engage in, abuse of the child victim." WIS. STAT. § 813.122(5)(a)3.   The statute further provides that the injunction is effective for not more than two years or until a child victim turns eighteen years old, whichever occurs first.  Sec. 813.122(5)(d)1.  However, a court may order an extended term of not more than five years "if the court finds, by a preponderance of the evidence stated on the record, that … [t]here is a substantial risk that the respondent may commit sexual assault … against the child victim" pursuant to WIS. STAT. § 940.225(1)-(3), or WIS. STAT. § 948.02(1)-(2). Sec. 813.122(5)(dm)1.  This court "will sustain a discretionary decision as long as the circuit court examines the relevant facts, applies a proper standard of law, and, using a demonstrated rational process, reaches a conclusion that a reasonable judge could reach." *Gahl ex rel. Zingsheim v. Aurora Health Care, Inc.*, 2023 WI 35, ¶18, ___ Wis. 2d ___, 989 N.W.2d 561.

¶11     "Whether such reasonable grounds exist is a question of mixed fact and law." *M.Q. v. Z.Q.*, 152 Wis. 2d 701, 708, 449 N.W.2d 75 (Ct. App. 1989). We will uphold the circuit court's "[f]indings of fact ... unless clearly erroneous[.]"  WIS. STAT. § 805.17(2).  We independently review the circuit

6

court's "conclusion of law as to whether, based on the facts of record, reasonable grounds existed to grant the injunction." *Kristi L.M. v. Dennis E.M.*, 2007 WI 85, ¶22, 302 Wis. 2d 185, 734 N.W.2d 375. "We may independently review the record to determine whether sufficient evidentiary grounds exist to sustain" the circuit court's exercise of discretion. *Id.*

¶12     Christopher argues that the circuit court's factual findings were not sufficient to support granting the injunctions at all, much less for the extended term of five years. He asserts that the circuit court found that the children made allegations against Christopher, but the court did not find that the abuse occurred or that the children were credible. Additionally, he argues that the circuit court failed to exercise separate discretion for the heightened findings required for the extended five year injunction, namely that there was a substantial risk of Christopher sexually assaulting the children.

¶13     In contrast, the GAL argues that the circuit court's factual findings were sufficient and detailed. She argues that Christopher has not overcome the high bar to disturb the court's discretionary decision to grant the injunction. She argues that the court's credibility findings are not reviewable by the appellate court. While it is true that "[w]hen the circuit court acts as the finder of fact, it is the ultimate arbiter of the credibility of the witnesses and the weight to be given to each witness's testimony"; the issue here is the court's failure to make specific findings with regard to the children's credibility. *See State v. Peppertree Resort Villas, Inc.*, 2002 WI App 207, ¶19, 257 Wis. 2d 421, 651 N.W.2d 345.

¶14     Moreover, we begin with the burden as described by the GAL. The GAL asserts that "Christopher must demonstrate that the court failed to (1) logically interpret the facts, (2) apply a proper legal standard, <u>and</u> (3) use a

demonstrated, rational process to reach the conclusion of a reasonable judge." (Emphasis in original.) This is a misstatement of the standard. To show an erroneous exercise of discretion by the circuit court, an individual does not need to prove that the court failed in all three ways, but instead, to show that at least one step was flawed. *See, e.g., State v. Raye*, 2005 WI 68, ¶16, 281 Wis. 2d 339, 697 N.W.2d 407 ("An erroneous exercise of discretion may arise from an error in law or from the failure of the circuit court to base its decisions on the facts in the record."); *LeMere v. LeMere*, 2003 WI 67, ¶14, 262 Wis. 2d 426, 663 N.W.2d 789 ("[T]he failure to apply the correct legal standards is an erroneous exercise of discretion."); *State v. Sullivan*, 216 Wis. 2d 768, 781, 576 N.W.2d 30 (1998) ("A circuit court's failure to delineate the factors that influenced its decision constitutes an erroneous exercise of discretion."). Discretionary decision making "contemplates a process of reasoning[,]" which must depend on facts or reasonable inferences of facts of record applied to the "proper legal standards." *McCleary v. State*, 49 Wis. 2d 263, 277, 182 N.W.2d 512 (1971). We will disregard such a decision if the court fails to examine the relevant facts, or fails to apply the proper standard of law, or fails to demonstrate a rationale process in its decision making. *See id.* at 277-78.

¶15 "Our analysis of the circuit court's decision begins with the court's factual findings and credibility determinations." *Kristi L.M.*, 302 Wis. 2d 185, ¶28. Although the circuit court does not, at any time, use the phrase that it found either of the children's statements that abuse occurred to be credible, we interpret various statements within the court's oral ruling as the court finding the children to be credible. Further, the court expressly found the testimony of both the case manager and the forensics interviewer that abuse occurred to be credible. In contrast, the court found Christopher's testimony to the contrary to be "incredible"

8

in multiple aspects.[3] We now turn to the facts and reasonable inferences from those facts which would support the court's finding that abuse occurred and thus, there were reasonable grounds to grant the injunction.

¶16 First, the court stated that it reviewed the videos of the forensic interviews, which means that the court's findings are not based entirely on the testimony of the ongoing case manager and the forensics interviewer, but the court actually heard and observed the children making their disclosures about the sexual abuse. Further, the court found the statements of both Jessica and Gregory referring to sexual abuse by their father "to be quite disturbingly specific," from which we may infer that the court found them credible in their statements.

¶17 Second, we infer that the court found the children's statements to be credible accounts because of their actions after their disclosures of sexual abuse: they have not visited Christopher, they have refused to visit him, and they have refused to engage in family therapy. The record reflects that the court found that when approached about visitation, Jessica was borderline in tears and stated her father makes her feel worse, and Gregory stated that his father badgered him. The court also considered Jessica's five in-patient stays for mental health treatment to deal with suicidal ideation, self harm and aggressive behavior, with the most recent stay in May 2020.

---

[3] The record reflects that the court found Christopher's testimony "incredible" in several ways: (1) he testified that while Jessica was in mental health treatment, he spoke on the telephone with her and he confirmed adults were supervising Jessica during medication administration, but he was not sure "how the supervising thing" worked under the family interaction plan and what contact he was allowed; and (2) he testified that he desired to support the children with respect to dealing with the trauma at the time when it was appropriate; but despite being aware that wraparound care was added under the CHIPS case, he did not have contact with Jessica or Gregory's therapists after summer 2018, he did not know Jessica had a new therapist, and he did not attempt to make contact with Jessica's new therapist.

¶18   Third, the court relied on expert testimony of the forensics interviewer's "professional experience and training" to understand why these children delayed disclosures of sexual abuse.  We interpret this to mean the court found the children credible in light of the delayed disclosures, particularly its finding that Jessica may have delayed her disclosure, but she was always clear on the identity of the perpetrator.

¶19   Fourth, the court addressed and dismissed concerns about coaching, which identified facts supporting the credibility of the children.  The record reflects that the forensics interviewer explored with the children the differences between the truth and a lie during the recorded interview.  The interviewer asked the children to promise to tell the truth, and not guess at an answer.  The record reflects that Jessica said her mother told her to tell the truth and Gregory said that no one told him what to say.

¶20   Fifth, we infer that the court found Jessica credible because of the court's findings that Jessica was able to identify the approximate time periods the abuse occurred, where it occurred, and described in such detail how it felt, and how she felt afterwards.  We infer that the court found Gregory credible because of its findings describing Gregory's interview statements and noting the detail of his statements.

¶21   We conclude that the record demonstrates that reasonable grounds existed to support the circuit court's exercise of discretion in granting the injunctions based on Christopher's abuse of the children.  The court considered the relevant facts of the children's disclosures, the forensics interviews, the credibility of the children, the case manager, the forensics interviewer, and the "incredible" testimony of Christopher.  The court's oral ruling demonstrated a rationale process

in reaching a reasonable conclusion that Christopher engaged in sexual abuse of Jessica and Gregory. *See McCleary*, 49 Wis. 2d at 277-78. Therefore, we affirm the court's decision and orders to grant injunctions pursuant to WIS. STAT. § 813.122 against Christopher.

¶22 Nevertheless, the court's findings in support of the length of the injunctions are inadequate. As noted above, the extended five-year term injunction requires the court to find that "[t]here is a substantial risk" that the parent will commit statutory sexual assault against the child victims. *See* WIS. STAT. § 813.122(5)(dm)1.b.[4] The court stated, "Given the findings of fact [the court has] just made, [the court] also find[s] that the petitioner has met her burden for a five-year injunction against the father[].]" The GAL argues that the court incorporated the same findings and credibility determinations in its analysis to support the extended five-year injunction. Even accepting that no additional findings may be necessary, the court's ruling does not make findings that support the requirement for the extended five-year term of injunction.

¶23 To satisfy the extended five-year provision, the petitioner must show by a preponderance of evidence—that is, the evidence shows it is more likely than not—that the risk of sexual assault of the children by Christopher is substantial. *See* WIS. STAT. § 813.122(5)(dm)1.; *Marquez v. Mercedes-Benz USA, LLC*, 2012 WI 57, ¶51, 341 Wis. 2d 119, 815 N.W.2d 314 (discussing that the preponderance of evidence is the lowest burden of proof). Our examination of the record does not

---

[4] The extended five-year period of time for an injunction is also allowed when the court finds there is a "substantial risk that the respondent may commit first-degree intentional homicide under [WIS. STAT. §] 940.01, or 2nd-degree intentional homicide under [WIS. STAT. §] 940.05, against the child victim." WIS. STAT. § 813.122(5)(dm)1.a. However, the petitions in this case do not rely on this risk and we do not address it further.

support that the circuit court's factual findings addressed future risk of sexual assault from Christopher's conduct. At most, the court discussed therapeutic visitation for the children with Christopher, but decided against it, and left open future court action to request a change in the visitation order.

¶24 From the facts in the record, we have no basis to affirm the circuit court's conclusion to grant the extended five-year term of injunction. A circuit court erroneously exercises its discretion when there is "no reasonable basis for its decision." *Id.*, ¶105 (citation and one set of quotation omitted). This court may search the record to support the circuit court's findings, which we have attempted to do here. *Noble v. Noble*, 2005 WI App 227, ¶15, 287 Wis.2d 699, 706 N.W.2d 166. Ultimately, the circuit court's decision must show a "process of reasoning" that is absent here. *McCleary*, 49 Wis. 2d at 277 ("Discretion is not synonymous with decision-making.").

¶25 Accordingly, we reverse the circuit court's orders for the extended five-year terms of injunctions under WIS. STAT. § 813.122(5)(dm)1., while still affirming the orders for the injunctions. We remand with instructions to the circuit court to explain its reasoning for applying the extended five-year terms of the injunctions and to set forth in the record what facts it was relying upon in reaching that conclusion.

*By the Court.*—Orders affirmed in part; orders reversed in part and remanded with instructions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.